IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| The Michelin Retirement Plan; ) <br> The Investment Committee of the Michelin ) <br> Retirement Plan, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Dilworth Paxson LLP; ) <br> BFG Socially Responsible Investments, ) <br> Ltd.; Burnham Financial Group, Inc.; ) <br> Burnham Securities, Inc.; ) <br> COR Fund Advisors, LLC; ) <br> GMT Duncan, LLC; ) <br> Greenberg Traurig, LLP; ) <br> Thorsdale Fiduciary and ) <br> Guaranty Company Ltd.; ) <br> Valor Group Ltd.; Wakpamni Lake ) <br> Community Corp.; Wealth-Assurance AG; ) <br> Wealth Assurance Private Client ) <br> Corporation; Timothy B. Anderson; ) <br> Jon Michael Burnham; Devon D. Archer; ) <br> Bevan T. Cooney; Hugh Dunkerley; ) <br> Jason W. Galanis; John P. Galanis; ) <br> Gary T. Hirst; Frankie D. Hughes; ) <br> and Michelle A. Morton, ) <br> ) <br>     Defendants,[1] ) <br> _____ ) <br> ) <br> Frankie D. Hughes, ) <br> ) <br>     Counter Claimant, ) <br> ) <br> v. ) <br> ) <br> The Michelin Retirement Plan; ) <br> The Investment Committee of the Michelin ) <br> Retirement Plan, ) | Case No.: 6:16-cv-03604-HMH-JDA <br><br><br><br><br><br><br> **REPORT AND RECOMMENDATION** <br> **OF THE MAGISTRATE JUDGE** |

---

[1]Defendant U.S. Bank Association was voluntarily dismissed from this action on March 31, 2017. [Doc. 186.]

|                                   |   |
|-----------------------------------|---|
| Counter Defendants.               | ) |
|                                   | ) |
|                                   | ) |
| _____ | ) |

This matter is before the Court on a motion to stay and for extension of time to file an answer filed by Defendant Michelle Morton ("Morton") [Doc. 30]; and a motion to stay filed by the Michelin Retirement Plan and the Investment Committee of the Michelin Retirement Plan ("Plaintiffs") [Doc. 62]. Also pending before the Court are a motion to dismiss filed by Defendant Greenberg Traurig, LLP ("Greenberg") [Doc. 67]; a motion to intervene filed by the Chicago Transit Authority Retiree Health Care Trust ("RHTC") [Doc. 87]; a motion to dismiss filed by Defendants Dilworth Paxon, LLP and Timothy B. Anderson (collectively, the "DP Defendants") [Doc. 91]; and a motion to dismiss filed by COR Fund Advisors, LLC [Doc. 200]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters in cases involving litigation by individuals proceeding pro se and to submit findings and recommendations to the District Court.

Plaintiffs filed this action on November 10, 2016, alleging eleven causes of action against the above-named defendants. [Doc. 1.] On January 23, 2017, Morton, proceeding pro se, filed a motion to stay proceedings through the resolution of a related criminal case and for extension of time to file an answer. [Doc. 30.] On February 1, 2017, the DP Defendants filed a response in limited opposition, challenging the indeterminable length of time of the stay and stating that the DP Defendants' meritorious motion to dismiss would be filed on or before February 13, 2017. [Doc. 58.] On February 6, 2017, Defendant Frankie D. Hughes ("Hughes") filed a response in opposition, stating that her meritorious

motion to dismiss was due on or before February 13, 2017. [Doc. 64.] Also on February 6, 2017, Plaintiffs filed a motion to stay the proceedings. [Doc. 62.] Most defendants filed responses in support of Plaintiffs' stay request, including Hughes [Docs. 66, 77, 88, 117]; or defendants filed responses indicating that they had no position on the motion [Docs. 109, 111]; however, the DP Defendants and Greenberg filed responses in opposition [Docs. 78, 101]. After reviewing these motions, the undersigned recommends as follows.

## **BACKGROUND**

The following facts are taken directly from the Complaint. Plaintiff, the Michelin Retirement Plan ("the Plan"), is an employee welfare benefit plan governed by ERISA. [*Id.* ¶ 1.] The Plan was established and is maintained by Michelin North America, Inc., a corporation with its principal place of business in Greenville, South Carolina. [*Id.*] Plaintiff, the Investment Committee of the Michelin Retirement Plan (the "Investment Committee"), is a fiduciary of the Plan. [*Id.* ¶ 2.] On January 19, 1999, the Investment Committee entered into an Investment Management Agreement with Hughes Capital, a Virginia limited liability company. [*Id.* ¶¶ 4, 36.] Through the Investment Management Agreement, Hughes Capital assumed responsibility to "manage and invest certain Plan funds." [*Id.* ¶ 37.]

By letter dated August 22, 2014, Hughes Capital notified the Investment Committee that it had been acquired by GMT Duncan, LLC , a company founded by Morton. Between August 22, 2014, and August 26, 2014, Hughes Capital used $8,102,154 of employee retirement funds from the Plan to purchase a Wakpamni Lake Bond ("the Bond"). [*Id.* ¶ 39.] The Bond was issued by Wakpamni Lake Community Corporation ("WLCC"), a tribally-chartered corporation associated with the Oglala Sioux Tribe of the Pine Ridge Indian Reservation in South Dakota. [*Id.* ¶ 5.] By letter dated September 2, 2014, Hughes Capital

notified the Investment Committee that part of the Plan's portfolio had been used to purchase the Bond. [*Id.* ¶ 41.]

In a letter dated October 10, 2014, the Investment Committee notified Hughes Capital of the Investment Committee's termination of the Investment Management Agreement. [*Id.*] The Investment Committee directed Hughes Capital to transfer the Plan's portfolio, except for the Bond, to Northern Trust Investments, Inc. [*Id.*] Hughes Capital was directed to dispose of the Bond in the most efficient way possible. [*Id.*] For over a year, Plaintiffs were led to believe that efforts were ongoing to sell the Bond. [*Id.* ¶ 42.] On or about January 14, 2016, Plaintiffs learned that the Securities and Exchange Commission ("SEC") filed a Complaint against Atlantic Asset Management, LLC ("AAM"), a company purchased by GMT Duncan, LLC in April 2015, and the surviving entity of a merger involving Hughes Capital. [*Id.* ¶¶ 3, 42.] Plaintiffs then began to suspect that its funds may have been fraudulently misappropriated. [*Id.*]

Plaintiffs allege that Jason Galanis ("Jason") and John Galanis began a scheme to fraudulently misappropriate funds in 2014, when they convinced WLCC to issue bonds. [Doc. 1 ¶ 45.] Specific allegations are outlined in the Complaint, however, Plaintiffs generally allege that the scheme involved the Defendants engaging in the following acts:

- Setting up the Bond transaction to supposedly invest the proceeds in an "annuity" that was entirely fake;

- Placing co-conspirators in control of each entity involved with every aspect of the Bond transaction and carrying out their conspiracy with those persons;

- Acquiring ownership and control of investment management companies in order to steal retirement funds entrusted to those companies by "investing" those funds in fraudulent bonds;

4

- Using their conspiratorial cooperation to force client funds into the purchase of the issued tribal bonds; and

- Raiding the proceeds from closing the bonds in order to create a "slush fund" that would pay certain Defendants, directly and indirectly, to support their lifestyles, legal fees, and speculative ventures.

[Doc. 1 at 2; *see id.* ¶¶ 43–117.]

As stated, Plaintiffs allege eleven causes of action in the Complaint. [*Id.* ¶ 118–219.] Plaintiffs seek actual, consequential, special, and punitive damages; attorneys' fees and costs; prejudgment or post-judgment interest; and other relief the Court may deem just and proper. [*Id.* at 57–58.]

## **DISCUSSION**

### **Motions to Stay**

As stated, on January 23, 2016, Morton moved to stay this action until a related criminal case, *United States v. Jason Galanis, et al.*, 16 Cr. 0371 (R.A.) (S.D.N.Y.), in which she is a defendant, is resolved. [Doc. 30.] Upon the advice of her criminal case counsel, Morton asserted a Fifth Amendment privilege against self-incrimination in answering the instant action. [*Id.* at 2.] Further, Morton requests that if this Court denies the stay, she be permitted to withdraw her Fifth Amendment answer and replace it with a substantive answer, should she later be able to retain counsel in this matter. [*Id.* at 3.] Plaintiffs subsequently moved for a stay of 120 days because Jason, the alleged mastermind of the scheme outlined above, entered a plea on January 19, 2017, which included a monetary

5

judgment and forfeiture in the amount of $43,277,436[2]; Jason was scheduled to be sentenced on May 5, 2017; and there is a Revised Jointly Proposed Plan of Distribution (the "Distribution Plan") currently before the Southern District of New York in an action brought by the Securities and Exchange Commission arising out of the same fraudulent scheme, *SEC v. AAM*, 15 Civ. 9764 (WHP) (S.D.N.Y.), the adoption of which may significantly affect this action. [Doc. 62.] The hearing for approval of the Distribution Plan was scheduled for February 24, 2017.[3] [*Id.* at 2.] Plaintiffs request that Morton's stay be denied to the extent it seeks a stay for a period longer than 120 days. [Doc. 63 at 2.] The DP Defendants oppose Morton's motion [Doc. 55], and Greenberg and the DP Defendants oppose Plaintiffs' motion [Docs. 78, 101]. The limited opposition is primarily for the purpose of first ruling on the pending motions to dismiss. [Docs. 55, 78, 101.]

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Md. v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense."

---

[2] Counsel for Plaintiffs has attempted to contact the United States Attorney's Office to learn of the status of the monetary judgment and forfeiture account in Jason's criminal action; however, as of the filing of the motion to stay, Plaintiffs have been unable to learn of the status of this account. [Doc. 62-1 at 4.]

[3] The Court has not been provided with additional information regarding the outcome of the February 24, 2017, Distribution Plan hearing.

*Harbour Town Yacht Club Boat Slip Owners Ass'n v. Safe Berth Mgmt., Inc.*, 411 F.Supp.2d 641, 643 (D.S.C. 2005) (internal quotations omitted).  In determining whether to grant a stay, courts generally consider the following factors:  1) reduction of the burden on the parties and the court; 2) the stage of the litigation; and 3) any undue prejudice caused by the stay to the non-moving party.  *See Graham-White Mfg. Co. v. Ell-Con Nat'l., Inc.*, No. 6:05-0396-HFF-WMC, 2006 WL 2716439 * 2 (D.S.C. Sept. 22, 2006).

Here, after a careful review of the record, the undersigned recommends granting the motions to stay.  First, Plaintiffs have represented that after Jason's sentencing hearing on May 5, 2017, the monetary judgment and forfeiture in the amount of $43,277,436.00 in the criminal action could resolve or refine this matter.  [Doc. 62-1 at 4–5.]  Further, the adoption of the Distribution Plan in the *SEC v. AAM* case may also significantly affect this action. Second, this action is in its infant stage.  Plaintiffs are still in the process of properly serving all defendants.  Third, the only parties that oppose the motions to stay are Greenberg and the DP Defendants, and their opposition is for the limited purpose of ruling on their pending motions to dismiss.  [*See* Docs. 55, 78, 101.]  However, the Court cannot find that these Defendants will be prejudiced by the imposition of a stay because Greenberg and the DP Defendants can simply re-file their motions should this action continue after the stay.  Consequently, the undersigned recommends that the motions to stay the instant action be granted, thus  providing Plaintiffs with an opportunity to inquire as to receiving restitution that may completely alleviate, or at least reduce, the damages sought to be recovered in this action.

**Remaining Motions**

Also pending before the Court are Greenberg's motion to dismiss, filed on February

7, 2017 [Doc. 67]; RHCT's motion to intervene, filed on February 9, 2017 [Doc. 87]; the DP Defendants' motion to dismiss, filed on February 9, 2017 [Doc. 91]; and COR Fund Advisors, LLC's motion to dismiss, filed on May 4, 2017 [Doc. 200]. Because, as stated above, this action may be resolved through the monetary judgment and forfeiture of $43,277,436.00 in Jason's criminal action, or impacted by the Distribution Plan in the *SEC v. AAM* case, the undersigned further recommends that all remaining motions be denied with leave to re-file should this action proceed.[4]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the motions to stay [Docs. 30, 62] be GRANTED. The undersigned recommends that Plaintiffs provide the Court with a status update in sixty days with respect to the $43,277,436 monetary judgment and forfeiture in Jason's criminal action, and with respect to the adoption of the Distribution Plan in *SEC v. AAM*, informing the Court whether restitution has been received to alleviate or reduce the damages sought in this action. Further, the

---

[4]To the extent Morton moves for an extension of time to file an answer [Doc. 30], the undersigned notes that Morton has filed an Answer to the Complaint [Doc. 39]; thus, it appears she is actually moving to amend her Answer. Consequently, to the extent Morton seeks an extension of time to file an answer, her motion should be denied; however, should this action continue after the stay, Plaintiff may move to amend her Answer at that time. The undersigned further notes that Greenberg and the DP Defendants' motions to dismiss, along with Plaintiffs' responses, left the Court with several unanswered questions. For example, the DP Defendants challenge Plaintiffs Article III standing based on the fact that Michelin North America Master Trust is the registered owner of the Wakpamni Bond. [Doc. 91-1 at 10–12.] Plaintiff argues that the fact that the bonds were purchased by the Trust is irrelevant to standing. [Doc. 161 at 18.] However, neither party provides the Court with law to support their analyses. Also, Greenberg suggests that the law of South Carolina, Colorado, or South Dakota *could* apply to Plaintiffs' professional negligence-legal malpractice claim without providing support. [Doc. 67-1 at 9 n.2.] Should this action proceed and these Defendants re-file their motions, the Court expects that the parties will more thoroughly brief all arguments and cite to legal authority for their positions.

8

undersigned recommends that all remaining motions [Docs. 67, 87, 91, 200] be DENIED, with leave to re-file.

 IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

May 10, 2017
Greenville, South Carolina