**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

|  |  |
|---|---|
| _____ : | |
| **The Michelin Retirement Plan and the** : | **C.A. No. 6:16-cv-03604-DCC-JDA** |
| **Investment Committee of the** : | |
| **Michelin Retirement Plan,** : | |
| : | |
| **Plaintiffs,** : | |
| **and** : | |
| : | |
| **Chicago Transit Authority Retiree** : | |
| **Health Care Trust; and the Board** : | |
| **of Trustees for the Chicago Transit** : | |
| **Authority Retiree Health Care Trust,** : | |
| : | |
| **Intervening Plaintiffs,** : | |
| : | |
| **v.** : | |
| : | |
| **Dilworth Paxson LLP, et al.,** : | |
| : | |
| **Defendants.** : | |
| _____: | |

**DEFENDANTS DILWORTH PAXSON LLP'S AND TIMOTHY B.**
**ANDERSON'S MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT IN**
**INTERVENTION**

Defendants Dilworth Paxson LLP ("Dilworth") and Timothy B. Anderson ("Anderson")

(Dilworth and Anderson are referred to, collectively, as the "DP Defendants") submit this

Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint [ECF Dkt.

411] of Intervenors Plaintiff Chicago Transit Authority Health Care Trust and the Board of

Trustees of Chicago Transit Authority Health Care Trust and ("Plaintiffs") for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)[1] and for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

Intervenor Plaintiff, Chicago Transit Authority Retiree Health Care Trust is an employee

welfare benefit plan established by the Illinois State Legislature to provide healthcare benefits to

retirees of the Chicago Transit Authority.  Am. Cmpt in Intervention, ¶12 (hereinafter "Am.

Cmpt.")  CTA Trust is maintained by its Board of Trustees, which is also a Plaintiff in this

action.  *Id.¶*13.  Plaintiffs allege that on September 9, 2009 they entered into an Investment

Management Agreement with Hughes Capital Management, LLC ("Hughes Capital"), and a

Virginia limited liability company.  *Id.*, ¶ 37.  According to Plaintiffs, through the Investment

Management Agreement, Hughes Capital assumed responsibility to "manage and invest" certain

funds belonging to Chicago Transit Authority retirees.  *Id.*, ¶¶37-38.

Plaintiffs aver that as its investment manager, in August 2014 Hughes Capital spent

$4,073,499 of their retiree funds to purchase a bond issued by Wakpamni Lake Community

Corporation ("WLCC"), a tribally-chartered corporation associated with the Oglala Sioux Tribe

of the Pine Ridge Reservation in South Dakota.  *Id.*, ¶¶168-169; 59.  Plaintiffs recite that

Wakpamni Lake Community Corporation bonds would be invested in an annuity contract that

would generate sufficient income to pay the principal and interest on the bonds plus produce

additional funds for development projects on tribal land.  *Id.*, ¶¶63-64.

According to the Amended Complaint, despite these representations, the bond proceeds

were not invested in an annuity but, rather, were immediately misappropriated by Jason Galanis

---

[1] This Court issued a text order by Magistrate Judge Austin on January 7, 2019 [Dkt. 383] which
stated an intervenor has no right to challenge in venue.  Plaintiffs filed an Objection to the order,
to which the DP Defendants have responded.  However, the matter of venue is still unresolved.

and Hugh Dunkerley. *Id.* ¶¶192-194. Plaintiffs allege Jason Galanis conceived this fraudulent

concept and needed four components to carry it out: 1) a financial conglomerate; 2) an issuer; 3)

a bond lawyer; and 4) purchasers. *Id.* ¶¶46-47.

The individuals involved in creating the financial conglomerate used to effectuate the

scheme included John Galanis, Hugh Dunkerley, Steven Sugarman, Devon Archer, Bevan

Cooney, as well as various entities. *Id.* ¶¶48-57. While not implicated as participants in Jason

Galanis's scheme, Plaintiffs claim that the DP Defendants are still liable, under several causes of

action, because the DP Defendants failed to discover the scheme. *Id.* ¶6. Indeed, the Amended

Complaint is replete with allegations that the DP Defendants "should have" known certain facts

or that they ignored "red flags" in the provision of legal services for Burnham Securities. See

e.g., *Id*. ¶¶6, 96, 99, 105, 112, 158-162. However, even if accepted as true, the allegations of the

DP Defendants' supposed constructive knowledge are insufficient to support any of the three

causes of action asserted (tortious interference with a contract, professional negligence, or aiding

and abetting).[2]

The specific allegations against the DP Defendants are that:

1.      The DP Defendants were retained by Burnham Securities in relation to the bond

project. Am. Cmpt. ¶¶70-71; Ex. A to Am. Cmpt.

---

[2] Plaintiffs' Amended Complaint is significantly longer than their original complaint. Upon comparison between the two documents, it is apparent that Plaintiffs have attempted to creatively plead allegations in order to keep the last defendant with perceived deep pockets in this lawsuit, but the allegations simply do not create any cause of action against the DP Defendants.

2.      The DP Defendants prepared a Big Boy[3] letter and that Anderson stated it was "not odd, but not the usual" for Hughes Capital to sign instead of the pension plan itself. *Id.* ¶134, Ex. G to Am. Cmpt.

3.      The DP Defendants prepared an opinion letter to WLCC, Burnham Securities, and U.S. Bank and that the contents therefore of were based on facts or assumptions that the DP Defendants "knew or should have known" to be false. *Id.* ¶¶155-162; Exhibit I to Am. Cmpt.[4]

4.      The DP Defendants forwarded an email with wire instructions from Jason Galanis. Id. ¶¶182-184.[5]

Notably absent from the Amended Complaint are the following crucial allegations:

1.      That the DP Defendants actually knew that Jason Galanis and others were scheming to steal the pension funds' investments. For example, Plaintiffs allege that "Anderson knew that the very fact he was opining on the validity of the transaction would be misleading **if**, he, in the exercise of due care, **suspected** the bonds were

---

[3] A "Big Boy" letter is often used in investment transactions between sophisticated parties in which the buyer acknowledges that it is an experienced investor who has made its own assessment of the investment and has not relied on the seller's representations, essentially stating, "I am a big boy." *Harborview Master Fund, LP v. Lightpath Techs., Inc.*, 601 F. Supp. 2d 537 (S.D.N.Y. 2009).

[4] The phrase "knew or should have known" only indicates constructive and not actual knowledge of a party. *V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 12 Civ. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) ("General allegations that a party 'knew or should have known' about the contract in question" do not properly allege actual knowledge of the contract.); *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1206 (C.D. Cal. 2006) (noting, in the context of an aiding-and-abetting claim, that "the phrase 'knew or should have known' does not plead actual knowledge").

[5] Magistrate Judge Austin's Report and Recommendations on the Motion to Dismiss the Michelin complaint has already noted that absent allegations that the DP Defendants "advised Jason concerning the preparation of the instructions, or even that Dilworth read the instructions and considered their legal implications before forwarding them along[,]" the DP Defendants were "used merely as a means of communication." [Dkt. 408 at p. 26].

**possibly** fraudulent." Am. Cmpt. ¶161. This speculative allegation is a far cry from pleading that Anderson knew that the bonds were fraudulent and issued the opinion letter anyway.

2.    That the DP Defendants had any knowledge that the investment guidelines prohibited Plaintiffs from participating in this type of investment. In fact, in Paragraph 117 of the Amended Complaint, Plaintiffs state:

> Anderson testified during the criminal trial that, based on his experience, Native American bonds are usually unrated. [Plaintiffs'] investment guidelines, and on information and belief, the investment guidelines of other bondholders, generally prohibited investments in such bonds.

Plaintiffs did not allege that Anderson **knew** that Plaintiffs' guidelines prohibited the investment. In fact, there is no allegation that Anderson or anyone else associated with Dilworth ever saw the Investment Management Agreement between Plaintiffs and Hughes Capital  or any investment guidelines associated with that relationship.

3.    That the DP Defendants had any knowledge that Hughes Capital  never contacted Plaintiffs for authorization to purchase the bonds.  In Paragraph 125, Plaintiffs assert that "[Hughes Captial] never contacted [Plaintiffs], or on information and belief, any of the other pension plan bondholders, to discuss, let alone authorize, the acquisition of WLCC bonds."  Again, Plaintiffs fail to allege that the DP Defendants **knew** that Hughes Capital had not received authorization. Thus, while this lack of authorization [or exceeding the investment guidelines] may subject Hughes Capital to liability, it has no effect on the DP Defendants.

4.    That Dilworth or Anderson ever had an attorney-client relationship with Plaintiffs, or that Plaintiffs relied upon any legal advice that Dilworth provided to its client, Burnham Securities.

Because this Court lacks personal jurisdiction over the DP Defendants, and because Plaintiffs' have failed to state a cognizable claim against Dilworth or Anderson, Plaintiffs' claims against Dilworth Paxson LLP and Timothy Anderson must be dismissed, with prejudice.

## **ARGUMENT**

## I.     **THIS COURT LACKS PERSONAL JURISDICTION OVER THE DP DEFENDANTS.**

It is well established that a district court may assert personal jurisdiction over an out-of-state defendant only where the defendant has "certain minimum contacts" with the forum state such that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 397 (4th Cir. 2003) (citation omitted). These "notions of fair play and substantial justice" are embodied in the Due Process Clause of the Fourteenth Amendment. The Supreme Court standard "injects an element of foreseeability" into the analysis, which is satisfied when a defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528(1985).[6] For personal jurisdiction to exist, the United States Supreme Court has determined that an out-of-state defendant must either have contacts with the forum so "continuous and systematic" that the defendant is "essentially home in the forum State" (*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (discussing general jurisdiction)) or "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 521 U.S. 277, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (discussing specific jurisdiction).

---

[6] Unpublished cases are attached as **Exhibit 1**.

A.    **The Court Lacks General Jurisdiction Over the DP Defendants.**

As the Supreme Court recently confirmed, "the paradigm" forums for the exercise of general jurisdiction over a corporation are "the place of incorporation and the principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014) (citation omitted).  Only in an "exceptional case" is general jurisdiction available anywhere else. *Id.,* 134 S.Ct. at 761 n. 19.  Where an out-of-state defendant does not have an enduring relationship with South Carolina sufficient to indicate substantial, continuous and systematic contact, general jurisdiction is lacking and, therefore, personal jurisdiction does not exist. *Callum v. CVS Health Corp.,* 137 F. Supp. 3d 817, 837 (D.S.C. 2015) (no general jurisdiction where plaintiff failed to offer sufficient evidence that defendant has an enduring relationship with South Carolina so as to render it as home there).

In this instance, Plaintiff concedes that Dilworth is a Pennsylvania limited liability partnership "organized under the laws of Pennsylvania" with its principal place of business in Pennsylvania, not South Carolina.  Am. Cmpt., ¶27.  Anderson is alleged to have been associated with Pennsylvania-based Dilworth during the time relevant to Plaintiff's claims.  *Id.*, ¶2. Plaintiffs concede that the DP Defendants do not maintain an office in South Carolina and they are not licensed to practice law in South Carolina.  Id. ¶27.  There are no allegations that the DP Defendants own bank accounts or property in South Carolina or otherwise transact any business operations in, or provide services to, individuals in this forum.  Simply stated, neither Dilworth nor Anderson is claimed to be at home in South Carolina and, therefore, neither can be subject to general personal jurisdiction in this Court.

**B.**     **The Court Also Lacks Specific Jurisdiction Over the DP Defendants.**

The Supreme Court has explained that specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Supreme Court has made clear that "[this] relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden,* 134 S.Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (emphasis in original)). Additionally, the Court explained, the due process "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* In performing this evaluation, the defendants' suit-related conduct must "create a **substantial connection** with the forum state." *Walden*, 134 S.Ct. at 1121 (emphasis added). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated'." *Id.*, at 1122 (citation omitted). In addition, the defendant's contacts with the forum state must be related to the plaintiff's claim: "The first step to achieving personal jurisdiction is that a claim must arise out of, or be related to, the defendant's in-forum activities." *Hannon v. Beard*, 524 F.3d 275, 282 (1st Cir. 2008). The relatedness standard "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Id*.

South Carolina's long-arm statute lists eight bases on which a court may exercise specific jurisdiction. S.C. Code Ann. §36-2-803. "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." S.C. Code Ann. §36-2-803(B). Here, Plaintiff claims that personal jurisdiction exists under "§36-2-803(A)(1), (3) and (7)" of the long-arm statute because the DP Defendants

supposedly transacted business in South Carolina, committed a tortious act within the state and/or entered into a contract to be performed "in part" in South Carolina. Am. Cmpt. ¶34

Despite these boilerplate allegations, Plaintiffs do not identify a single business transaction, tortious act or contract sufficient to connect the DP Defendants to South Carolina, nor could it. In fact, the DP Defendants

-- have never had an office in South Carolina,

-- are not registered to do business in the forum,

-- do not maintain an agent in the state,

-- are not licensed to practice in this jurisdiction,

-- do not have any South Carolina employees,

-- do not own real or personal property here,

-- do not solicit business in state, and

-- have never deliberately engaged in significant or long-term business activities within South Carolina.

*See* Affidavit of Patrick M. Northen, **Exhibit 2** hereto, ¶4.d and Affidavit of Timothy B. Anderson, **Exhibit 3** hereto, ¶5.

There is also no evidence that the DP Defendants committed an intentional tort, much less that they aimed tortious conduct at this forum in a manner that the forum can be said to be the focal point. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *See also* Exhibit 2, ¶4.d and Exhibit 3, ¶5. In fact, to the extent the DP Defendants are alleged to have taken any actions, none of those actions is alleged to have taken place in South Carolina. *See*, *e.g.* Am. Cmpt. ¶155 (Dilworth and Anderson (located in Pennsylvania) provided WLCC (located in South Dakota) a summary of the bond program); *id.*, ¶184 (Dilworth (located in Pennsylvania) forwarded email instructions from Jason Galanis (located in California) to US Bank (located in Minnesota)); *Id.*

¶¶ 7, 127,133 (Dilworth and Anderson (located in Pennsylvania) prepared a Big Boy letter that Hughes Capital (located in Virginia) signed.

Plaintiffs attempt to invoke jurisdiction by claiming that South Carolina based Michelin purchased the most bonds and thus, the DP Defendants directed their activities toward this state. This statement, even if accepted as true, does not support jurisdiction for *Plaintiffs*' claims because in order to obtain specific personal jurisdiction over a defendant, there must be a nexus between the plaintiff's claim and the defendant's contacts with the forum state. Here, an out-of-state plaintiff has asserted a claim against an out-of-state defendant for an injury sustained in an out-of-state location (Illinois or Virginia). Obviously, Plaintiffs claims are not related to or arising out of DP's contacts (if any) with South Carolina. While the DP Defendants have also disputed personal jurisdiction in the Michelin matter, at least that plaintiff (Michelin) has contacts with South Carolina; the Plaintiffs here do not.

Moreover, the only contract to which the DP Defendants are a party is the retention agreement between Dilworth, a Pennsylvania limited liability partnership, and Burnham Securities, Inc. a New York company with offices in California. *Id.*, ¶71; Ex. A to Am. Cmpt. There are no allegations that any part of that contract was to be, or was, performed in this forum.[7] Absent evidence of actions by the DP Defendants sufficient to create the necessary **substantial** connection between the DP Defendants and this forum related to Illinois residents' complaint, the exercise of specific personal jurisdiction under S.C. Code Ann. §36-2-803(A) would not comport with the due process clause.

---

[7] In Paragraph 34 of the Amended Complaint, Plaintiffs assert that the contract to be performed in South Carolina was the bond and bond indenture. Of course, while the DP Defendants prepared bond documents, they were not <u>parties</u> to either of those.

## II.     PLAINTIFFS FAILED TO STATE A CLAIM AGAINST THE DP DEFENDANTS.

Even if there is personal jurisdiction over the DP Defendants, Plaintiffs have failed to state a claim against them for tortious interference with a contract, negligence, or aiding and abetting the breach of fiduciary duty. Thus, all claims against the DP Defendants should be dismissed, with prejudice, on these bases as well.

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Callum*, 137 F. Supp. 3d at 833 (citation omitted).  Despite the deference afforded the plaintiff, the complaint must still "state a plausible claim for relief to survive a 12(b)(6) motion" and must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* (citations omitted).  If a "plaintiff's assertions amount to nothing more than a formulaic recitation of the elements of a cause of action," however, "the Court may deem such allegations conclusory and not entitled to an assumption of veracity." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (internal quotations marks omitted)).  Stated differently, plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.  (Citation omitted).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  While Rule 8 is a "generous departure" from the prior hyper-technical regime, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*, 556 U.S. at 678-79.

Here, Plaintiff seeks actual and punitive damages against the DP Defendants on the basis of three causes of action, which are addressed in turn.

**A.    The claim for tortious interference fails because there are no allegations that the DP Defendants intentionally procured a breach.**

In South Carolina, the elements of tortious interference are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. *Dutch Fork Dev. Grp. II, LLC v. SEL Properties, LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012). An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach, *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007).  These elements for tortious interference are the same in Arizona. *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 31 (Az. 2002). Pennsylvania has a heightened standard requiring proof that the defendant "acted for the specific purpose of causing harm to the plaintiff," but otherwise shares the same elements. *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 933-34 (Pa. Super. Ct. 2013) (internal quotations omitted).[8]

Here, there are no allegations that the DP Defendants intentionally procured a contract breach.  Plaintiffs only claim that the DP Defendants knew that Plaintiffs had an agreement with Hughes Capital and knew that pension plans have management agreements with investment guidelines.  Am. Cmpt. ¶¶265-266.  Plaintiffs do not allege that the DP Defendants had actual knowledge of the content of those guidelines or had ever even seen those guidelines. Plaintiffs

---

[8] In the Report and Recommendations on the motion to dismiss the Michelin matter, this Court discussed the issue of choice of law.  [Dkt. 408 at 19]. Plaintiffs asserted that South Carolina substantive law applied, while the DP Defendants believed that Pennsylvania law would apply. Id. at 20. The Report indicated that the law of the state from where the money was misappropriated from U.S. Bank would likely apply.  Id.  The Amended Complaint alleges that U.S. Bank held the money in Arizona. Am.Cmpt. ¶¶169-171. Thus, in this Memorandum the DP Defendants have included the elements of each cause of action for all three states.

also do not claim that it would be the usual course of business for bond counsel to review a non-client's investment guidelines. Moreover, Plaintiffs do not allege that the DP Defendants intentionally procured Hughes Capital's breach of the management agreement/guidelines, but instead claim that the DP Defendants' mere preparation of a "Big Boy" letter somehow equates to procurement of a breach of Hughes Capital's contract with Plaintiffs. Am. Cmpt. ¶267. However, Plaintiffs do not (and cannot) allege that the DP Defendants actually knew that Hughes Capital was approving an unauthorized investment in breach of their duties to Plaintiffs. The most Plaintiffs can allege is that the DP Defendants "knew that **if** [Hughes Capital] approved an unauthorized investment, it would be a breach of the RCHT Agreement." Am. Cmpt. ¶ 268. Absent an allegation that the DP Defendants actually knew that Hughes Capital was approving an unauthorized investment, the fact that they prepared a Big Boy letter cannot constitute an intentional procurement of Hughes Capital's breach of contract.

**B.     Plaintiffs have failed to assert a claim for professional negligence because there is no duty owed by the DP Defendants.**

To establish a claim for negligence in connection with the representation of a client in Pennsylvania, Plaintiff must plead the following three elements:

1. employment of the attorney or other basis for a duty;

2. the failure of the attorney to exercise ordinary skill and knowledge; and

3. that the attorney's negligence was the proximate cause of damage to the plaintiff.

*Kituskie v. Corbman,* 714 A.2d 1027, 1029 (Pa. 1998); *accord Steiner v. Markel,* 968 A.2d 1253, 1255 (Pa. 2009). The elements of a cause of action for legal negligence in South Carolina are,

essentially, the same as the elements under Pennsylvania law.[9] *McNair v. Rainsford*, 330 S.C.

332, 499 S.E.2d 488, 493-94 (S.C. Ct. App. 1998) (the elements are: (1) existence of an attorney-

client relationship, (2) breach of duty by the attorney, (3) damage to the client and (4) proximate

cause of plaintiff's damages). The key to this cause of action is an attorney-client relationship

between the attorney and the plaintiff.  *See, e.g.*, *Argoe v. Three Rivers Behavioral Ctr. &*

*Psychiatric Sols.*, 697 S.E.2d 551, 554 (S.C. 2010) ("[A]n attorney owes no duty to a non-client

unless he breaches some independent duty to a third person or acts in his own personal interest,

outside the scope of his representation of the client." (citation and internal quotation marks

omitted)); *Naper v. Bertram*, 954 P.2d 1389, 1393 (Az. 1998) (similar); *Guy v. Liederbach*, 459

A.2d 744, 746 (Pa. 1983) (similar).

        The elements of a cause of action for legal negligence in Arizona are, likewise, the same

as the elements under both South Carolina and Pennsylvania law. *Philips v. Clancy*, 733 P.2d

300, 303 (Ariz. Ct. App. 1986) ("One claiming legal malpractice must therefore establish (1) the

existence of an attorney-client relationship which imposes a duty on the attorney to exercise that

degree of skill, care, and knowledge commonly exercised by members of the profession, (2)

breach of duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the

fact and extent of the injury.").  In Arizona, to avoid the rule that a professional does not owe a

duty of care to a non-client, "special circumstances" generally must exist where "there was a

foreseeable risk of harm to a foreseeable non-client whose protection depended on the actor's

conduct." *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 24 P.3d 593, 601 (Ariz. 2001)

(noting factors such as "the closeness of connection between the defendant's conduct and the

---

[9]Although the heading labels this cause of action as "negligence," Plaintiffs' references to the
Rules of Professional Responsibility and other allegations make it clear that what they assert is
professional negligence.

injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Id*. at 600).

In this instance, Plaintiffs have not, and cannot, allege that the DP Defendants represented Plaintiffs, thereby creating a duty. To the contrary, Plaintiffs readily identify Burnham Securities, Inc., and only Burnham Securities, Inc., as the DP Defendants' client. Am. Cmpt. ¶71. Plaintiffs attempt to get around this hurdle by asserting that the DP Defendants knew their actions could harm foreseeable plaintiffs such as bond purchasers. However, liability to a third party non-client is so limited as to exclude Plaintiffs here. "As a general principle, an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Hunt v. Mortg. Elec. Registration*, 522 F. Supp. 2d 749, 758 (D.S.C. 2007)(internal quotations omitted). As one legal treatise has acknowledged, "foreseeability is merely a factor to be balanced" and "by itself is not generally sufficient." Mallen, Ronald E. *Legal Malpractice* § 7:19 (2018 Ed.) Attorney's advice that is not communicated to or relied upon by the non-client does not create any duty. *Goodman v. Kennedy*, 556 P.2d 737 (Ca. 1976) (attorney incorrectly advised client that stock could be sold while still maintaining the registration exemption under securities exemption; court found attorney had no duty to the non-client plaintiffs who were the purchasers of the stock).

Here, the opinion letter of August 24, 2014 was sent to three entities -- WLCC, US Bank and Burnham Securities-- and not Plaintiffs. Moreover, there are no allegations that Plaintiffs ever saw the opinion letter of the DP Defendants much less actually relied on it. In fact, Plaintiffs alleged that they knew nothing about the bonds until after they were purchased. It is equally clear

that the Plaintiffs were not third-party beneficiaries of the DP Defendants relationship with

Burnham Securities, Inc. applying Pennsylvania, South Carolina, or Arizona law.[10]

Plaintiffs' insinuation that "legal opinions" issued by the DP Defendants created such a

relationship is also unsupported.  Am. Cmpt., ¶281-282.  In truth, the DP Defendants' "opinions"

addressed the legality of the bonds and were limited to the following:

1.    [Wakpamni Lake Community Corporation] is a body corporate and politic validly
existing under the laws of the Tribe and has the power and authority to execute and
deliver the Indenture and to issue and deliver the Bonds.

2.    The Indenture has been duly authorized, executed and delivered by [Wakpamni
Lake Community Corporation] and the obligations of [Wakpamni Lake Community
Corporation] under the Indenture constitute binding obligations of [Wakpamni
Lake Community Corporation], enforceable against [Wakpamni Lake Community
Corporation] in accordance with its terms.

3.    The Bonds have been duly authorized, executed, issued and delivered by
[Wakpamni Lake Community Corporation] and are the binding limited obligations of
[Wakpamni Lake Community Corporation] and are enforceable against [Wakpamni Lake
Community Corporation] in accordance with their terms.

4.    [Wakpamni Lake Community Corporation] has properly waived its sovereign
immunity as it related to the enforcement of its obligations under the Bond Documents.

5.    The Bonds are exempt from registration pursuant to the Securities Act of 1933, as
amended and the Indenture is exempt from qualification pursuant to the Trust Indenture
Act of 1939, as amended.

*See* Exhibit I to Am. Cmpt.  The Opinion clearly states that it is limited to the five opinions

itemized.  *Id.*, p. 3.  CTA Trust does not allege any facts to demonstrate that these opinions were

false, much less how these true opinions could have led to the diversion of bond proceeds about

---

[10] An example of a third-party beneficiary suit against an attorney is found in *Fabian v. Lindsay*,
410 S.C. 475, 489, 765 S.E.2d 132, 140 (2014).   That case held that intended beneficiaries of a
will who lose their testamentary rights because of failure of the attorney who drafted the will to
properly fulfill his obligations under his contract with the testator may recover as third-
party beneficiaries. *Id.*  There is no such situation present here.

which it complains.  In fact, none of the DP Defendants' opinions addressed the bond proceeds or how they were to be invested.

The connection that the DP Defendants allegedly had to the injury that the Plaintiffs suffered is extremely tenuous.  The Amended Complaint alleges the DP Defendants prepared an opinion letter for the WLCC [Am. Cmpt. ¶¶155; 282; 285-287]; prepared a "Big Boy" letter which was signed by Hughes Capital *[Id.* ¶283(h)]; and forwarded wire instructions from Jason Galanis to U.S. Bank *[Id.*. ¶¶182-184]. Plaintiffs do not allege that, in drafting these basic documents and forwarding these instructions on behalf of their client Burnham Securities, the DP Defendants actually realized, or even suspected, that the Plan's funds would be misappropriated, that the instructions were part of the scheme, or that anything was amiss. Rather, they allege that the DP Defendants "knew or should have known" certain facts that would have alerted a reasonable attorney to the possibility that the instructions were part of a scheme to misappropriate the bond proceeds and that conducting a reasonable investigation would have uncovered the scheme.[11] Am. Cmpt. ¶¶283-284.  On this theory that the DP Defendants "should have known" certain facts, Plaintiffs claim that the DP Defendants are liable to Plaintiffs for professional negligence, despite the fact that Plaintiffs were not their clients.

---

[11] Such allegations suggest only constructive knowledge; they do not give rise to a reasonable inference of the DP Defendants' actual knowledge of any malfeasance.  *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 309–10 (4th Cir. 2018) (holding that when the defendant could be liable for infringement only if it had actual knowledge of the infringement, a jury charge allowing the jury to find liability if the defendant "knew or should have known" of infringement activity was improper because it would allow imposition of liability for a mere negligent failure to discover the infringement); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 12 Civ. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) ("General allegations that a party 'knew or should have known' about the contract in question" do not properly allege actual knowledge of the contract.); *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1206 (C.D. Cal. 2006) (noting, in the context of an aiding-and-abetting claim, that "the phrase 'knew or should have known' does not plead actual knowledge").

The Amended Complaint contains no allegation that the DP Defendants actually knew of the planned misappropriation. As Magistrate Judge Austin noted in dismissing the Michelin complaint, the DP Defendants' *constructive* knowledge of the planned misappropriation and the foreseeability that such misappropriation would severely harm the bondholders are insufficient to give rise to a duty on the DP Defendants' part to take reasonable steps to discover the possible threat to the Plaintiffs and protect the Plan from it.  [Dkt. No. 408 at p. 23].  Rather, "where non-clients . . . are concerned, an attorney's liability [for failing to protect from malfeasance] is generally limited to the narrow set of circumstances in which the attorney [himself] has committed fraud or a malicious or tortious act."  *Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 877 (Colo. 2016); *see Estate of Cabatit v. Canders*, 105 A.3d 439, 443 (Me. 2014) ("In legal malpractice suits, therefore, except in egregious circumstances demonstrating such serious misdeeds as fraud, only a client with whom an attorney stands in privity of contract may bring a suit against the attorney."); *see also Hustler Cincinnati, Inc. v. Cambria*, 625 F. App'x 712, 718 (6th Cir. 2015) (noting that a departure from the general rule precluding attorneys' liability to third parties would be justified only under "special circumstances such as fraud, bad faith, collusion or other malicious conduct" (internal quotation marks omitted)); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 371–72 (S.D.N.Y. 2013) (similar).[12]

---

[12] See also, *In re CitiSource, Inc. Sec. Litig.*, 694 F. Supp. 1069, 1082–83 (S.D.N.Y. 1988). While CitiSource involved securities fraud claims, the plaintiff also sued the bond issuer's attorneys for fraud.  The court noted that the plaintiff did not allege that the attorneys actually knew of the fraud, only that they were was reckless or negligent in failing to discover it. *Id.*  The court found that the attorneys "performed the functions which customarily attend the position of counsel to an issuer. Thus [plaintiff's] argument reduces to the proposition that the mere fact of [the attorneys'] position as special counsel to CitiSource permits a strong inference that it was reckless in failing to discover the fraud perpetrated by the principals of that company." *Id.*  Here, Plaintiffs are using a similar approach, claiming that by mere fact of their role as bond counsel, the DP Defendants should have known of Galanis's subsequent fraudulent behavior.

Because such circumstances are not alleged here, Plaintiffs have failed to state a professional-negligence claim.

Dismissal is also required with respect to the Fifth Cause of Action because there is no factual basis provided for Plaintiffs' conclusory statement that the DP Defendants' actions represented a lapse in the professional care due here. Am. Cmpt. ¶286. Notably, Plaintiffs failed to secure the required Certificate of Merit attesting to the efficacy of their legal malpractice claim. Pennsylvania Rules provide that "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard" the attorney for the plaintiff "shall file" with the complaint or within sixty days after the filing of the complaint:

(a) … a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

* * *

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

* * *

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3(a). The certificate of merit requirement in Pennsylvania is substantive, not procedural and, therefore, its provisions are applicable here. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011). That said, the result is the same under South Carolina law which requires a similar certification in actions for damages alleging professional negligence. S.C. Code Ann. §15-36-100. Similarly, in Arizona a claimant is required to certify

whether expert testimony is necessary to support its professional negligence claim.  A.R.S. §12-2602; *see also, Kaufman v. Jesser*, 884 F.Supp.2d 943, 953 (D. Ariz. 2012) ("Arizona's statutory expert disclosure scheme is substantive Arizona law").  Simply put, without the required Pennsylvania Certificate of Merit or South Carolina and Arizona Certifications, the Fifth Cause of Action must be dismissed as to the DP Defendants.

Finally, there is no fact alleged from which this Court could conclude that the DP Defendants, who are not alleged to have any role in the fraud here, and are not identified as confederates of Jason Galanis, could possibly be the "but for," or proximate cause, of CTA Trust's alleged damages.[13]  Absent facts supporting any of the three elements of their cause of action for Professional Negligence, the Fifth Cause of Action as to the DP Defendants must be dismissed under Rule 12(b)(6) as well.

**C.    The elements of aiding and abetting cannot be met by DP Defendants' performance of routine professional services.**

With regard to their final cause of action, the Plaintiffs have failed to allege the essential elements of aiding and abetting a breach of fiduciary duty.  In considering the requirements for civil aiding-and-abetting liability, courts have generally looked to the Restatement (Second) of Torts § 876(b) (1979) for guidance.  See Katerina P. Lewinbuk, *Keep Suing All the Lawyers: Recent Developments in Claims against Lawyers for Aiding & Abetting a Client's Breach of Fiduciary Duty*, 8 St. Mary's L. J. on Legal Malpractice & Ethics 158, 164 (2017).  That section provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives

---

[13] Indeed, in a filing in a related federal civil proceeding pending in the District Court for the Southern District of New York, the Executive Director of the Trust stated that "Hughes Capital Management, Inc. misappropriated Chicago Transit Authority Retiree Health Care Trust's funds …."  **Exhibit 4** hereto, ¶5.

substantial assistance or encouragement to the other so to conduct himself . . . ."  Restatement

(Second) of Torts § 876(b) (1979); *see Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)

(citing section 876(b)); *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008)

(same); *Future Group, II v. NationsBank*, 478 S.E.2d 45, 50 (S.C. 1996)(same); *see also Auto-*

*Owners Ins. Co. v. Bolden*, 2017 WL 3923356, at *9 (D.S.C. Sept. 7, 2017) (dismissing claim

for aiding and abetting under South Carolina law on basis that plaintiff failed to plead facts

showing the defendant provided substantial assistance).  Thus, in most states, "to be found liable

for aiding and abetting a breach of fiduciary duty, one must demonstrate that the party knew that

the other's conduct constituted a breach of fiduciary duty and gave substantial assistance or

encouragement to the other in committing that breach."  *Bd. of Trustees of Teamsters Local 863*

*Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2004); see *also BMG Rights Mgmt.*

*(US) LLC*, 881 F.3d at 309 ("'An actor is liable for harm resulting to a third person from the

tortious conduct of another "if he *knows* that the other's conduct constitutes a breach of duty and

gives substantial assistance or encouragement to the other."'" (quoting *Cent. Bank of Denver,*

*N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994)).

As discussed in the section on negligence, the Amended Complaint fails to allege that the

DP Defendants knew that Galanis and his cohorts would divert the funds for their own use.[14] The

Amended Complaint merely claims that the DP Defendants knew that Hughes Capital owed

---

[14] Any allegations as to what the DP Defendants "should have known" can be disregarded as that
does not constitute actual knowledge. *Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200,
1206 (C.D. Cal. 2006) (noting, in the context of an aiding-and-abetting claim, that "the phrase
'knew or should have known' does not plead actual knowledge").  Even if, as Plaintiffs claim in
Amended Complaint, that the DP Defendants negligently or recklessly ignored "red flags," [See
Am. Cmpt. ¶¶112,158], their actions do not equate to actual knowledge or substantial assistance.
"Although no specific wrongful or willful intent is required [for aiding and abetting], usually there
must be more than recklessness." Mallen, *Legal Malpractice* at § 6:12.

fiduciary duties to Plaintiffs and that Hughes Capital was obligated to follow the investment guidelines in its agreement with Plaintiffs. Am. Cmpt. ¶¶294-295. There is no allegation that the DP Defendants knew the parameters of those investment guidelines or had ever been provided with those guidelines. Furthermore, a plaintiff must allege not only that the defendant knew there was a fiduciary duty, but also that the defendant knew it was being breached. Richard C. Mason, Civil Liability for Aiding and Abetting, 61 Bus. Law. 1135, 1159–60 (2006). Plaintiffs have not alleged that the DP Defendants knew that Hughes Capital was breaching its fiduciary duties by investing in the bond or signing the Big Boy letter. Thus, the element of "knowing participation" needed for aiding and abetting has not been adequately pled.

Even assuming that Plaintiffs' allegations satisfy the knowledge requirement, they do not satisfy the requirement of "substantial assistance or encouragement." In explaining what that concept means, one noted treatise has stated: "The conduct must be active and substantial and more than negligence." Mallen, *Legal Malpractice* at § 6.13.

Courts have strictly enforced the element of "substantial assistance" in aiding and abetting claims against professionals: "In addressing aiding and abetting liability cases involving professionals, most courts have recognized that 'substantial assistance' means something more than the provision of routine professional services." *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 188-189 (Minn. 1999). In *Witzman*, a sister (Witzman) alleged that her brother breached his fiduciary duties as trustee and asserted an aiding and abetting claim against an accounting firm that had provided professional services to the brother and the trusts. Witzman alleged that the accounting firm had assisted the breach of fiduciary duty by "preparing financial statements, setting up draw accounts, recording conveyances and providing tax advice…." Id at

188-189.  The court held that these were "routine accounting duties" that cannot satisfy the substantial assistance element.

In addition, the Fourth Circuit Court of Appeals has held that attorneys did not provide "substantial assistance" required for an aiding and abetting claim when they drafted the closing documents by which their client purchased a company from the sellers, who later alleged they had been defrauded. *Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991).  In that case, the Schatzes received $1.5 million in promissory notes for the sale of their business, and the notes were personally guaranteed by Rosenberg. The Schatzes relied on a financial statement dated March 31, 1986 and an update letter delivered at closing on December 31, 1986 which indicated that Rosenberg's net worth exceeded $7 million. These financial documents contained several misrepresentations obscuring the fact that Rosenberg's financial empire had crumbled between April and December of 1986 and that various bankruptcy cases had been filed. The law firm of Weinberg & Green represented Rosenberg and his entities throughout this period. *Schatz v. Rosenberg*, 943 F.2d at 488 (4th Cir. 1991). The Fourth Circuit rejected the notion that the attorneys could be aiders and abettors merely for preparing and disseminating deal documents that contained material misrepresentations or omissions:

> Clearly, the fact that an attorney drafts a closing document does not automatically create a warranty that every statement and agreement made by the client is true. Any other result would make attorneys co-guarantors and co-signatories, along with their client, in every securities transaction.

*Id.* at 497.[15]

---

[15] See also, *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 500 (N.D. Ind. 2014)(finding that lawyer's preparation of merger documents did not constitute substantial assistance, despite the fact that it helped the parent company to "loot" one of its subsidiaries.

Here, the Amended Complaint alleges that the preparation of the Big Boy letter for Hughes Capital signature, instead of the pension fund's signature, somehow constitutes both knowledge that Hughes Capital was breaching its fiduciary duties and not following the pension fund's guidelines and substantial assistance. Am. Cmpt. ¶¶295, 297.  Of course, there is no allegation that the DP Defendants had been provided the guidelines or had any knowledge of the guidelines or limitation on Hughes Capital's investment authority, so the knowledge requirement cannot be met.  Furthermore, the preparation of this letter --which was not required for the transaction to close[16]-- falls squarely within the routine performance of professional services that *Schatz* and *Witzman* found to be insufficient for the "substantial assistance" requirement of aiding and abetting.

## **CONCLUSION**

For the reasons set forth herein, Defendants Dilworth Paxson LLP and Timothy B. Anderson respectfully submit that their Motion to Dismiss should be granted.

LEWIS BABCOCK L.L.P.

/s/ Keith M. Babcock
Keith M. Babcock, Federal I.D. 1143
David L. Paavola, Federal I.D. 11713
Joseph B. Berry, Fed. I.D. 12883
1513 Hampton Street
Post Office Box 11208
Columbia, South Carolina 29211
Telephone: (803) 771-8000
Facsimile: (803) 733-3534
kmb@lewisbabcock.com

Attorneys for Defendants
Dilworth Paxson LLP and
Timothy B. Anderson

Dated: February 18, 2019

---

[16] Plaintiffs acknowledge that Big Boy letters are optional and not mandatory in Paragraph 122 of the Amended Complaint.